Parker C. J.
The tax assessed upon and collected of the plaintiff, was granted by the inhabitants of the town of Walpole at a meeting held on the 15th of May, 1826, pursuant to a warrant under the hands and seals of the selectmen, dated the 8th of the same month. The grant of the tax was in these words, “ Voted to grant 600 dollars to pay the Rev. George Morey and for ministerial uses.” The purpose of this payment to Mr. Morey was, to execute a contract made between him and a committee of the town, in virtue of which he was to discontinue his pastoral relation with the town and exonerate them from any farther expense for his support. This was within the authority of the inhabitants of the town, acting on parochial matters ; there being no incorporated parish within the town.
It is objected, that there was no article in the warrant by which the meeting was called, which would justify the vote to grant the tax.
The 2d article in the warrant is, “ To hear the report of the committee that was chosen to consult with the Rev. George Morey relative to dissolving his ministerial contract with said town, and act thereon as they see cause.” ■
The 3d article in the warrant is, “ To adopt such measures in relation to their ministerial concerns as may then and there seem expedient, and act thereon as they see cause.”
The treaty with Mr. Morey had been going on several months, and all the inhabitants of the town must have been fully aware that an adjustment of the terms of separation had been in progress.
At the March meeting on the 6th of March, 1826, under a warrant of the 20th of February of the same year, a committee was raised to confer with Mr. Morey on the subject of the dissolution of the contract, and the terms on which it should take place. This proceeding was regular, under the 5th article of the warrant, which was, “ To see if the town will hire a cier *103 gyman to assist the Rev. George Morey in his ministerial duties, or take such other measures in relation thereto as they shall see cause.” The committee made report at an adjourned meeting held on the 3d of April, 1826, no agreement having then been made. Whereupon a committee was chosen to consult counsel on the legal effect of the contracts of Mr. Morey.
At a meeting held on the first day of May, 1826, it was voted, that it was the wish of the town to dissolve the ministerial connexion, and a committee was again chosen to confer with Mr. Morey.
The 7th article in the warrant for calling this meeting is as follows : “ To hear the report of the committee respecting the settlement with Mr. Morey, and act thereon as they see cause.”
This gave sufficient notice of the subject matter, and authorized the vote passed at the meeting, to take measures to dissolve the contract, and the appointment of a committee to bring this matter to a close.
This committee made an amicable adjustment with Mr. Morey, and their report was made to and accepted by the town at a meeting regularly called, held on the 15th of May. And this proceeding was clearly justified under the second and third articles of the warrant for calling this meeting. And no meeting nor more particular notice was necessary, to authorize the vote for granting a tax for the purpose of executing the contract which had been finally made. “ To hear the report of the committee that was chosen to consult with the Rev. George Morey relative to dissolving his ministerial contract with said town, and act thereon as they see cause,” considering the publicity o<’ preceding measures, and the knowledge which must be presumed in the inhabitants, that the terms of settlement were in train, was sufficient to advertise the town that a contract would be reported, and that if accepted, money would be raised to carry it into execution. The tax was therefore legally gianted, and was binding upon all the inhabitants, whether present at or absent from the meeting ; least of all ought the plaintiff to complain, who was present, and, if he did not vote for the tax, declined merely because he thought the sum granted *104 was too small • for we cannot suppose he was acting w.bi duplicity upon that occasion.[1]
Whether the tax was legally assessed then, is the remaining question, and in regard to this, it will certainly require some substantial defect to disturb the whole financial concerns of a town for the year; for such must be the effect of adjudging a tax to be void on account of a fault in the assessment. The principal objection, and the only one which has caused any doubt in our minds, is the omission of a column in the tax bill, of income, as distinct from other objects of taxation.
By the particular tax act for the year 1824, which was the last general tax act before the town tax in question, it is required in the 4th section, “that the treasurer shall require the selectmen or assessors to malee a fair list or lists of their assessments, setting forth in distinct columns against each person’s name, how much he is taxed for polls, and for real and personal estate and income respectively as aforesaid and such list or lists, when completed and signed by them, or the major part of them, to commit to the collector or constable of such town, district, &c. respectively.
If this act stood alone, there would be no question as to the duty of the assessors in the above particulars, more especially as there is appended to the act a printed form of rate lists to be made by assessors and committed to collectors, which has in it a distinct column for income. The only question then would be, whether a strict adherence to this form, would be essential to the validity of an assessment, or whether it should be considered directory only, so that the omission of it would not avoid the whole tax ; and of this we should entertain some doubt, considering the mischievous effects of avoiding a tax legally granted, and to all appearance fairly assessed.
But we feel ourselves relieved from determining this point, by the doings of the legislature the same year, and indeed the same session, in which the abovementioned tax act was passed.
By a general statute passed on the 21st of February, 1824, (Sí. 1823, c. 138, § 1) it is provided, that whenever the treas *105 urer shall be directed to send a tax act to the assessors of any town, &c., it shall be his duty to send therewith a suitable number of blanks for invoice and valuation books, in the form hereinafter prescribed, and also suitable and convenient forms of warrants, certificates of assessments for state, town, &c. taxes, and also blanks for tax lists or books, sufficient, &c.
By the 3d section it is provided, “ that a copy of the list of the assessments of all taxes, together with a copy of the invoice and valuation from which such assessment shall be made, shall, before the taxes assessed are committed for collection, be deposited in the assessors’ office, &c. and there to remain, to the end that all persons interested may have an opportunity of examining, and exposing any errors, for the purpose of correction, which may have happened in the assessment of said taxes.”
The 4th section enacts, “that hereafter, the form of an invoice or valuation, with the assessments thereon, to be deposited as aforesaid, shall be substantially as follows.” Then follows the form, having no column for income, but including that, as we must suppose, in the column for personal estate.
And by the 6th section, all acts before passed, so far as they are inconsistent, are repealed.
It is very difficult to account for the difference in the forms thus provided in the two acts. In the last, the only valuable purpose of particularity is stated as the end and object of the provision. In the first act, the list to be delivered to the collectors is evidently to be a copy of that, which by preceding laws was to be lodged in the assessors’ office. There is nothing by which it can be ascertained which of these statutes was enacted first or last, except the arrangement of chapters, which may have been accidental, or may have been from the secretary’s knowledge of the order in which they were passed. We are inclined to adopt the opinion, that the general act, though passed the same day, should be considered as paramount in authority to the particular act, which is usually copied from preexisting tax acts with little or no variation, and passes without any discussion, being founded upon principles before settled. We cannot suppose that the legislature, in providing regulations for all taxes in future, would hastily omit a provision of the for *106 mer acts, if such provision had been deemed essential to the validity of the tax, or would suffer it to be repealed by implication, unless that effect was intended. We cannot suppose that they intended to require that the list committed to the collector, should be more particular than that which was to be recorded, in order that all persons interested might expose errors and have them corrected.
We consider then, that a column for income, though useful, is not essential, and that the legislature has in fact authorized lists in the form adopted by this town, by causing to be sent to them this general form. This act is perpetual in its form and its requisitions. The assessors might well suppose that it superseded a particular statute limited in its operation to one year, and that they were released by this general provision - from strictly adhering to forms prescribed in an act wh ch had ceased to operate two years before they were called upon to assess the tax in question. We are all of opinion, therefore, that the tax is not void on account of the omission, and therefore the plaintiff must be nonsuit and the defendants recover their costs.[1]

 See Revised Stat. c. 20, § 16; Torrey v. Millbury, 21 Pick. 68; First Parish in Sutton v. Cole, 3 Pick. (2d ed.) 242, note 1,

 See Revised Stat. c. 7, § 31.